E. BRYAN WILSON
Acting United States Attorney

RYAN D. TANSEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: Ryan.Tansey@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. |
| | ) | |
| Plaintiff, | ) | COUNT 1: |
| | ) | INTERFERENCE WITH |
| vs. | ) | GOVERNMENT EMPLOYEE |
| | ) |    Vio. 36 C.F.R. § 2.32(a)(1) and 18 |
| JASON LANCE, | ) | U.S.C. § 1865(a) |
| | ) | |
| Defendant. | ) | COUNT 2: |
| | ) | VIOLATING LAWFUL ORDER |
| | ) |    Vio. 36 C.F.R. § 2.32(a)(2) and 18 |
| | ) | U.S.C. § 1865(a) |
| | ) | |
| | ) | COUNT 3: |
| | ) | FALSE REPORT |
| | ) |    Vio. 36 C.F.R. § 2.32(a)(4) and 18 |
| | ) | U.S.C. § 1865(a) |
| | ) | |

//

//

# I N F O R M A T I O N

## GENERAL ALLEGATIONS

1. Denali Pass is located at 18,200 feet on Denali's West Buttress, the most frequently climbed route on Denali. A steep, 1,000 foot snow and ice slope called the "Autobahn" leads climbers between the pass and high camp at 17,200 feet.

2. The defendant, Dr. JASON LANCE ("DR. LANCE"), is a licensed medical practitioner from Mountain Green, Utah.

3. On May 24, 2021, DR. LANCE and his climbing partner, A.R., were attempting to summit Denali via the West Buttress.

4. DR. LANCE and A.R. were not registered climbing partners but had grouped up that day for a summit attempt from 14,200ft camp.

5. Between 18,600 and 19,200 feet, just above Denali Pass, DR. LANCE observed A.R. begin to exhibit symptoms of altitude sickness. Concluding that A.R. was too sick to continue climbing, DR. LANCE left A.R. with a separate group of two other climbers ("Team Two") and continued by himself towards the summit.

6. The Team Two climbers, recognizing A.R.'s condition, abandoned their own summit attempt to help A.R. descend.

7. At some point prior to leaving A.R., DR. LANCE took possession of A.R.'s Garmin inReach satellite communication device.

8. At some point after separating, DR. LANCE abandoned his solo summit attempt and rejoined A.R. and Team Two, who were by then nearing Denali Pass.

9. The four climbers descended towards Denali Pass with DR. LANCE in the lead, followed by A.R., who was followed by Team Two. DR. LANCE and A.R. were un-roped.

10. At approximately 6:00pm,[1] A.R. fell from the top of Denali Pass, tumbling approximately 1,000 feet down the Autobahn.

11. DR. LANCE soon became aware that A.R. was no longer behind him and saw a climber laying motionless at the bottom of the Autobahn. DR. LANCE triggered the SOS button on A.R.'s Garmin inReach and reported the fall to the Garmin International Emergency Response Coordination Center ("IERCC").

12. Climbers at the 17,200-foot high camp also witnessed the fall and reported it to the Denali National Park Service ("Denali NPS"). Denali NPS's high-altitude helicopter was conducting glacier monitoring surveys at the Kahiltna Basecamp and quickly mobilized for a rescue operation. Pilot Andy Hermansky flew to the 14,200-foot camp and picked up Denali Mountaineering Ranger Chris Erickson. They arrived at A.R. less than 30 minutes from the initial notification. A.R. was alive but unresponsive and immediately transported to Talkeetna, where paramedics provided life-saving treatment.

13. At approximately 7:00pm, after A.R. had been helicoptered off the mountain, DR. LANCE sent the following message to IERCC with A.R.'s inReach device: "No injuries. stuck without equipment after climber fall. Request assisst for

---

[1] All times are listed in Alaska Daylight Time (AKDT).

evac." IERCC responded and advised DR. LANCE to "message Denali National Park directly at mtn_ranger@nps.gov."

14. At approximately 7:51pm, Denali NPS messaged DR. LANCE on A.R.'s inReach device: "If you have a rope available, you need to rope up and start descending. You may remove the fixed pickets and bring them with you to use further down if necessary."

15. At approximately 7:58pm, one of the Team Two climbers sent a message to another individual, stating, in part, "Accident on upper mtn. Our team is all ok."

16. At approximately 8:05pm, DR. LANCE responded to Denali NPS, stating: "there are no pickets available. We cannot safely descend." At approximately 8:26pm, Denali NPS replied to DR. LANCE, stating: "[t]he helicopter cannot come to your location and is not flying any more tonight. Do you have a rope with you? Your only option tonight is descent."

17. At approximately 8:47pm, DR. LANCE messaged Denali NPS: "Cant decend safely. Patients in shock. Early hypothermia.. Cant you land east of pass?" Because medical shock is a serious and potentially fatal condition, Denali NPS launched a helicopter with rescue supplies to reach the three climbers, but did not at that point inform DR. LANCE it had done so. Shortly after launch, the helicopter turned around because guides at 17,200ft camp reported that the three climbers were descending from Denali Pass under their own power.

18. The members of Team Two reported that neither of them had suffered from any form of medical shock or hypothermia at any point during their ascent or descent, contrary to DR. LANCE's claims to Denali NPS. Both members of Team Two reported that they spent hours attempting to convince DR. LANCE to rope up and descend with them from 18,200ft to 17,200ft high camp after the trio watched A.R. fall. Team Two reported that DR. LANCE insisted the three stay put, told Team Two that the NPS was going to rescue them, and that the NPS was obligated to do so because "we've paid our fee." After several hours, Team Two convinced DR. LANCE to descend and the three made it to 17,200ft high camp without incident.

19. On May 25, 2021, Denali NPS Mountaineering Ranger and Law Enforcement Officer Chris Erickson interviewed DR. LANCE at his tent at 14,200ft camp regarding A.R.'s accident and the ensuing events. Following a recounting of the events leading up to A.R.'s accident, Ranger Erickson informed DR. LANCE that he (Ranger Erickson) was collecting and safeguarding all of A.R.'s personal belongings to transport the items back to him or his family. Ranger Erickson asked DR. LANCE for A.R.'s Garmin inReach device, to which DR. LANCE responded "No." Ranger Erickson explained that it is his job and official function to safeguard A.R.'s personal property and asked DR. LANCE again for the device. DR. LANCE again responded "No, I'm not giving it to you." Ranger Erickson found DR. LANCE's behavior suspicious because DR. LANCE and A.R. did not know each other well and had only just teamed up prior to their summit attempt. Ranger Erickson asked DR. LANCE for the device a third time and

informed him that, in addition to being a Mountaineering Ranger, he (Ranger Erickson) was also a Federal Law Enforcement Officer who could be trusted with A.R.'s personal property.

20. DR. LANCE then exited his tent and spent approximately 5 minutes searching through his duffel, backpack, tent, and vestibule. DR. LANCE's tent and vestibule door were wide open, and inside his tent on the right side of his sleeping pad Ranger Erickson saw the antenna for the Garmin inReach device. Ranger Erickson informed DR. LANCE that it appeared A.R.'s device was located next to his sleeping pad. DR. LANCE instead reached into his backpack, pulled out his cell phone and then re-entered his tent.

21. Ranger Erickson informed DR. LANCE that he did not need his cell phone to produce A.R.'s Garmin inReach device. Ranger Erickson also told DR. LANCE not to turn on or manipulate the inReach device in any way, and told him "do not delete any messages from the device." DR. LANCE then placed his backpack in a way that blocked some of the view into the tent. Ranger Erickson could clearly see around the backpack from his position outside the tent and vestibule and watched DR. LANCE holding the Garmin inReach device in his left hand and his cell phone in his right hand. Ranger Erickson again told DR. LANCE "do not delete any messages or information from the device."[2] Ranger Erickson then observed DR. LANCE "swiping" on his cell phone while

---

[2] Garmin inReach devices can be "linked" to any smartphone with Bluetooth capabilities to facilitate easier text messaging. Messages sent to and from the Garmin inReach via the smartphone app appear in both the Garmin inReach device itself, as well as the user's smartphone app. Messages can be deleted by swiping left on the message thread in the smartphone app.

telling Ranger Erickson that he had no right to violate his (DR. LANCE's) privacy. Ranger Erickson informed DR. LANCE that he was outside his tent and was not violating his privacy. DR. LANCE responded by leaning forward and zipping up the vestibule to the tent.

22. Ranger Erickson informed DR. LANCE through the tent walls that if DR. LANCE were to delete any messages, he could face legal repercussions. DR. LANCE responded with statements about his privacy and stated that NPS should have rescued *him* (DR. LANCE) the previous night. Ranger Erickson told DR. LANCE that if he deleted any messages from the device, Ranger Erickson would have a mechanism to find out. DR. LANCE continued to state that he (DR. LANCE) should have been rescued and that Ranger Erickson had no right to be outside his tent. Approximately 3-5 minutes after he zipped up the door to the vestibule, DR. LANCE unzipped the door and handed Ranger Erickson A.R.'s inReach device. Ranger Erickson asked DR. LANCE if he had something to hide by deleting messages from the device. DR. LANCE did not reply.

23. On May 26, 2021, Ranger Erickson contacted DR. LANCE again about the message he sent to NPS claiming to need a helicopter rescue because the climbers from Team Two were suffering from hypothermia and shock. DR. LANCE reiterated that one of the climbers from Team Two ("Climber 1") had been suffering from hypothermia. Ranger Erickson informed DR. LANCE that Climber 1 reported that he/she did not at any point have hypothermia. DR. LANCE responded that he is a licensed and trained physician and that he would recognize early hypothermia better than Climber 1, and that

he (DR. LANCE) did not need to be lectured on hypothermia. Ranger Erickson asked DR. LANCE what medical treatment he provided to Climber 1 for hypothermia. DR. LANCE again stated that he did not need to be lectured on hypothermia.

24. When Ranger Erickson initially obtained the Garmin inReach device, it contained multiple messages that DR. LANCE sent to Denali NPS on May 24, claiming to require helicopter rescue because "patients in shock. Early hypothermia." Subsequent investigation and a search warrant to Garmin International revealed that multiple additional messages between DR. LANCE and IERCC had been deleted from the inReach device, including a message sent less than two hours earlier in which DR. LANCE stated there were "no injuries" and claimed an entirely different reason that helicopter rescue was necessary, namely, because they lacked proper equipment to descend. *See* ¶ 13.

The United States Attorney charges that:

## COUNT 1

On or about May 25 and 26, 2021, within the District of Alaska and the exclusive jurisdiction of Denali National Park and Preserve, the defendant, DR. JASON LANCE, did resist and intentionally interfere with a government employee and agent engaged in an official duty, or on account of the performance of an official duty, to wit: the defendant refused multiple direct orders from Ranger Erickson to provide A.R.'s Garmin inReach device, and to not delete messages from the device.

All of which is in violation of 36 C.F.R. 2.32(a)(1) and 18 U.S.C. § 1865(a).

## COUNT 2

On or about May 25, 2021, within the District of Alaska and the exclusive jurisdiction of Denali National Park and Preserve, the defendant, DR. JASON LANCE, did violate the lawful order of a government employee and agent authorized to maintain order and control public access and movement during search and rescue operations and law enforcement actions, to wit: the defendant refused multiple direct orders from Ranger Erickson to provide A.R.'s Garmin inReach device, and to not delete messages from the device.

All of which is in violation of 36 C.F.R. 2.32(a)(2) and 18 U.S.C. § 1865(a).

//

//

//

//

//

//

//

//

//

//

//

//

COUNT 3

On or about May 24, 2021, within the District of Alaska and the exclusive jurisdiction of Denali National Park and Preserve, the defendant, DR. JASON LANCE, did knowingly give a false report for the purpose of misleading a government employee or agent in the conduct of official duties, and made a false report that caused a response by the United States to a fictitious event, to wit: the defendant told Denali NPS that the Team Two climbers were "in shock" and in the "early stages of hypothermia," which prompted deployment of a rescue helicopter, when in truth and fact the defendant knew that neither Team Two climber was experiencing medical shock or hypothermia.

All of which is in violation of 36 C.F.R. 2.32(a)(4) and 18 U.S.C. § 1865(a).

> E. BRYAN WILSON
> Acting United States Attorney
>
> s/ *Ryan D. Tansey*
> RYAN D. TANSEY
> Assistant U.S. Attorney
> United States of America